**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLAN DOUGLAS WILSON,<br>*Plaintiff*,<br>v.<br>JOHN A. SQUIRE,[1]<br>*Under Secretary of Commerce for For Intellectual Property*, *et al.*<br>*Defendants*. | Civil Action No. 25-3561 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Proceeding *pro se*, Plaintiff Allan Wilson brings this action against the Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office ("PTO"), the Chief Executive Office of the Internal Revenue Service ("IRS"), and ten "Doe" defendants, who remain unidentified and have yet to be served or to appear in this matter. Dkt. 1. He challenges two separate administrative decisions—first, the IRS's denial of his claim for a refund based on his asserted entitlement to a Recovery Rebate Credit in the amount of $1,800.00 pursuant to Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 26 U.S.C. § 6428 ($1200 credit); *see also* 26 U.S.C. § 6428A(a)(1) (additional $500 credit), and, second, the PTO's denial of his request for a refund of a $200.00 payment that he made in support of a patent application. He asserts *Bivens* claims against the Doe defendants for allegedly violating his Fifth Amendment right to procedural and substantive due process, *id.* at 12–13; a Declaratory Judgment Act claim against the PTO seeking a refund, *id.* at 14; a Declaratory Judgment Act

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Under Secretary of Commerce for Intellectual Property, John A. Squire, is "automatically substituted" for the prior incumbent, Derrick Brent.

claim against the IRS seeking a refund, *id.* at 14–15; claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), against the PTO and the IRS seeking injunctive relief and to set aside the challenged agency actions, *id.* at 15–17; and a "consumer protection and fair dealing" claim against the PTO and IRS seeking damages and equitable relief, *id.* at 17–18.

The Doe defendants have not been served (or even identified) and, thus, unsurprisingly, they have neither appeared nor responded to the complaint. The United States, however, has moved to dismiss. Dkt. 13. In addition to arguing that Plaintiff "improperly named and sued" the official-capacity defendants and that, instead, he should have named the United States, Dkt. 13-1 at 1, the government raises two principal defenses. First, it argues that Plaintiff's claims against the PTO fail as a matter of law because he was not entitled to a refund under the governing statute and regulations. *Id.* at 4–5. Second, it argues that Plaintiff's claims against the IRS fail because Plaintiff's "allowable refund" was "zero;" the Declaratory Judgment Act contains an exception for cases "with respect to Federal taxes;" the APA remedy is available only if "no other adequate remedy" is available, and, here, 26 U.S.C. § 7422 provides an adequate remedy for seeking a refund; the Internal Revenue Code provides a comprehensive remedial scheme that forecloses a plaintiff's ability to state a *Bivens* claim; and, finally, Plaintiff fails to identify any waiver of sovereign immunity that would permit him to recover from the PTO, the IRS, or the United States for a violation of any possible consumer protection laws or duty of fair dealing. *Id.* 5–9.

Plaintiff opposes the government's motion to dismiss and cross-moves for summary judgment. Dkt. 15. To start, Plaintiff clarifies that he seeks only injunctive and declaratory relief against the official-capacity defendants and that he seeks "monetary damages" only from the unidentified Doe defendants. Dkt. 15 at 17–18. He does, however, seek refund payments from

the PTO and IRS, plus interest, as well as an injunction barring "Defendants from continuing their unlawful practices" and requiring them "to establish proper procedures to prevent similar violations." Dkt. 1 at 18. On Plaintiff's telling, he has complied with all the relevant procedural requirements, and has a clear right to both a tax refund and a refund of the fee that he paid to the PTO.

For the reasons explained below, the Court will **GRANT** in part and **DENY** in part the government's motion to dismiss and will **DENY** Plaintiff's cross-motion for summary judgment. Plaintiff's asserted right to a tax refund based on a CARES Act credit is premised on a misreading of the governing statute of limitations. Because the IRS correctly rejected that claim, the Court will **DISMISS** all of Plaintiff's claims relating to a tax refund. The parties' arguments relating to Plaintiff's claims against the PTO, however, are insufficiently developed on the present record to permit the Court to grant the government's motion or to grant summary judgment in Plaintiff's favor. Accordingly, the Court will **DENY** both motions without prejudice with respect to the PTO fee. Finally, the Court will *sua sponte* **DISMISS** Plaintiff's claims against the ten Doe defendants, both because they have yet to be identified or served and because Plaintiff fails to allege any facts that could plausibly support a claim for individual liability.

## I. FACTUAL BACKGROUND

For purposes of resolving Defendants' motion to dismiss, the Court accepts the factual allegations set forth in Plaintiff's complaint as true. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 102 (D.D.C. 2024). Moreover, because Plaintiff is proceeding *pro se*, the Court will also consider his allegations in light of his opposition brief and further submissions. *See Naz v. Wright*, 177 F.4th 1242, 1244 (D.C. Cir. 2026). But for purposes of Plaintiff's cross-motion for summary judgment, the Court must construe the pleadings and any supporting evidence in the

light most favorable to Defendants, as the non-moving parties. *See Savignac v. Jones Day*, 754 F. Supp. 3d 135, 163 (D.D.C. 2024).

Plaintiff's allegations fall into two distinct buckets: his allegations relating to the PTO and his allegations relating to the IRS.

**A.**

Starting with the PTO, Plaintiff alleges that he "filed a utility patent application" on January 13, 2025. Dkt. 1 at 4 (Compl. ¶ 10). In support of that application, he "transmitted [a] payment of $200.00 to the" PTO on February 4, 2025. *Id.* (Compl. ¶ 11). He later received confirmation that the PTO received this payment. *Id.* According to Plaintiff, the PTO "incorrectly demanded additional payment," as well as additional documents, which Plaintiff "had already properly submitted" to the agency. *Id.* (Compl. ¶ 13). Plaintiff submitted the requested documents, and the PTO "confirmed receipt of" those materials in May and July 2025, but the agency "continued to refuse to process the application or acknowledge compliance with [the] filing requirements." *Id.* (Compl. ¶ 14).

Frustrated by the agency's "refusal to process" his patent application "despite confirmed receipt of documents and payment," Plaintiff requested a refund of his $200.00 payment. *Id.* at 5 (Compl. ¶ 15). On September 10, 2025, the PTO issued a letter decision denying Plaintiff's refund request. *Id.* (Compl. ¶ 16). The letter provided the following reason for the agency's decision: "A change of purpose after payment of a fee will not entitle a party to a refund of such fee (37 CFR 1.26(a))." Dkt. 1-1 at 19 (Ex. E). According to Plaintiff, he never received this letter. Dkt. 1 at 5 (Compl. ¶ 16). He did, however, call the "inquiries line," and was informed that his request had been denied. Dkt. 1-1 at 17 (Ex. D). After he sent an email to the agency

asking for PTO's reason for denying his request, the PTO helpdesk forwarded him a copy of the decision letter on October 8, 2025. *Id.* at 17–18 (Ex. D).

Plaintiff contends that the agency's stated rationale is "factually incorrect and legally inapplicable." *Id.* at 5 (Compl. ¶ 19). He asserts that he "did not change his purpose after payment" and that, instead, he merely requested the refund because the PTO had "failed to process his properly filed application and refused to acknowledge documents and payment that had been confirmed as received." *Id.* (Plaintiff does not elaborate on this difference between "acknowledging" and "confirming" receipt.)

Plaintiff continued to pursue this claim. On October 15, 2025, he spoke with someone in the "Patent Application Assistant Unit," *id.* at 6 (Compl. ¶ 21), and about fifteen minutes later spoke to someone staffing the "Petition Service Desk," *id.* (Compl. ¶ 23). During this latter call, Plaintiff was informed that his refund request was "denied because [he] allegedly changed the product requested," although the staffer "acknowledged that she did not personally know the reason and that she did not deny the request." *Id.* When Plaintiff asked "whether there was recourse or an appeal process," the staffer "referred him back to the Patent Application Assistance Unit" but also "suggested that Plaintiff make another refund request." *Id.* (Compl. ¶ 25). "Plaintiff understood this to be a deemed refusal to refund his payment . . . with no practical option to appeal." *Id.* (Compl. ¶ 26).

**B.**

Plaintiff's dispute with the IRS also began in 2025. On April 3, 2025, Plaintiff filed his 2020 federal income tax return, claiming a CARES Act tax credit of $1,800.00. *Id.* at 7 (Compl. ¶ 28). During the 2020 tax year, "Plaintiff received retirement income from Canada," and "he paid Canadian income taxes" on that income. *Id.* (Compl. ¶ 30). Plaintiff was, as a result,

entitled to claim a foreign tax credit pursuant to 26 U.S.C. § 901, which reduced his U.S. tax liability on a "dollar-for-dollar" basis. *Id.* (Compl. ¶¶ 30–31). According to Plaintiff, the combination of the dollar-for-dollar foreign tax credit and this asserted right to claim the CARES Act tax credit "create[ed] an overpayment situation," *id.* (Compl. ¶ 31), entitling him to a refund.

After some back-and-forth regarding documentation and details regarding "Plaintiff's 2020 income" and its proper "classification," *id.* at 7–8 (Compl. ¶¶ 32–35), "an IRS agent advised Plaintiff" on July 17, 2025, "that because it was over three years, he would not get the rebate," *id.* at 8 (Compl. ¶ 36). The IRS subsequently confirmed that Plaintiff would receive a foreign tax credit, "resulting in a zero balance owing" on his 2020 taxes. *Id.* (Compl. ¶ 37). On September 5, 2025, the IRS issued a disallowance of Plaintiff's claim for a refund. Dkt. 1-1 at 3 (Ex. A). The disallowance explained that the IRS could not allow Plaintiff's claim for refund because "[t]here is no provision in tax law which allows for filing a claim for [a CARES Act credit] beyond the standard deadline of three years from the due date of the original return for the tax year." *Id.* In Plaintiff's case, this deadline was dispositive because "[t]he last day to file a timely claim or federal tax return for tax year 2020 was June 15, 2024," yet Plaintiff did not file his 2020 tax return until April 9, 2025. *Id.*

Three days later, on September 8, 2025, Plaintiff "submitted a formal written protest," setting forth his "legal arguments" as to why he remained eligible for the CARES Act tax credit in 2025. Dkt. 1 at 9 (Compl. ¶¶ 41–42). He argued, in particular, that "the 10-year limitation period for refund claims relating to overpayments attributable to foreign taxes paid" is controlling, rather than "the standard 3-year period." Dkt. 1-1 at 12 (Ex. C). On Plaintiff's telling, his overpayment is a product of "[t]he combination of Canadian income taxes paid and

the [CARES Act] Credit," and thus the refund that he claimed was "related to overpayment attributable to foreign taxes paid." *Id.* at 12–13.

Plaintiff subsequently "contacted the IRS to follow up on his formal protest." Dkt. 1 at 10 (Compl. ¶ 43). The agent with whom he spoke confirmed that "there was a three-year limit on eligibility for the" CARES Act credit, that Plaintiff should consult the notice of disallowance for further explanation, and that "Plaintiff would have to appeal" if he disagreed. *Id.* (Compl. ¶¶ 46–47). According to Plaintiff, "[t]he IRS has constructively denied [him] meaningful administrative review of his claim and has refused to properly apply controlling law." *Id.* (Compl. ¶ 49).

## II. LEGAL STANDARD

Three legal standards govern the Court's consideration of the pending motions.

*First*, Defendants move to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction." *Hale v. United States*, No. CV 13-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction. *See Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). To survive a facial challenge under Rule 12(b)(1), the plaintiff must allege facts sufficient to sustain the Court's jurisdiction to resolve the controversy. *Janay v. Blinken*, 743 F. Supp. 3d 96, 103 (D.D.C. 2024). Where Plaintiff brings suit against the United States or a federal agency, this includes alleging facts sufficient to invoke a relevant waiver of sovereign immunity. *Ham v. Ayers*, 229 F. Supp. 3d 32, 37 (D.D.C. 2017) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Alternatively, "a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, the Court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). The Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

*Second*, Defendants move to dismiss under Rule 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted).

*Third*, Plaintiff cross-moves for summary judgment. Summary judgment is appropriately granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). In doing so, the movant may not rely on unverified allegations alone or mere assertions contained in the party's briefs. *Yaghoobi v. U.S. Dep't of Health and Hum. Servs.*, No. 24-1255, 2026 WL 3408313, at *4 (D.D.C. Nov. 10, 2026). Rather, the movant bears the burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" sufficient show that he or she is entitled to prevail as a matter of undisputed fact. Fed. R. Civ. P. 56(c)(1).

## III. ANALYSIS

The Court starts with the parties' dispute regarding the refund of the $200.00 that Plaintiff paid to the PTO in support of his 2025 patent application, then turns to their dispute regarding the IRS's denial of Plaintiff's refund request, and, finally, turns to Plaintiff's claims against the ten Doe defendants.

### A. Plaintiff's Claims Against the PTO

Defendants' opening brief in support of their motion to dismiss Plaintiff's claims against the PTO is cursory. They assert that the governing statute and regulations authorize the PTO

Director to refund patent fees only if the fee was "paid by mistake" or if the "amount paid" was "in excess of" the amount required. Dkt. 13-1 at 4. And then, in an exercise of unmitigated ipse dixit, they simply declare that the amount that Plaintiff paid "was not in excess of [the amount] required, nor was that fee paid by mistake." *Id.* That is the entirety of their argument.

In reply, Defendants offer some additional detail. They explain that in January 2025, "the minimum required fees for a utility patent application was $364 to $400, consisting of a . . . utility filing fee, a . . . utility search fee, and a . . . utility examination fee." Dkt. 19 at 2. They then assert that because Plaintiff had paid only $200, the PTO "asked for additional payment, which Plaintiff acknowledges he did not provide." *Id.* They also suggest that because Plaintiff failed to pay the full amount required in a timely manner, the PTO treated his application as "abandoned" pursuant to 37 C.F.R. § 1.135. And, finally, they assert that Plaintiff was not entitled to a refund of his $200 payment because the amount was neither paid in mistake nor in excess of the amount due. *Id.* at 2–3.

There are at least three problems with this fleshed-out argument. First, it was not sufficiently explained in Defendants' opening brief to provide Plaintiff, who is proceeding *pro se*, an opportunity to respond. Second, Defendants' factual assertions may be true, but they are not supported by any evidence—or, more aptly for present purposes, by the administrative record. Even more to the point, at least portions of Defendants' narrative are at odds with Plaintiff's allegations, which the Court must accept as true for purposes of resolving Defendants' motion to dismiss. To take one significant example, Defendants assert that Plaintiff concedes that he did not provide the "additional payment" required by the PTO. *Id.* at 2 (citing Dkt. 1 at 4 (Compl. ¶ 13). What Plaintiff actually alleges, however, is that the PTO "incorrectly demanded additional payment;" he does not allege that he failed to make any payment, much less a payment that was

due. Dkt. 1 at 4 (Compl. ¶ 13). More generally, Plaintiff does not concede that he abandoned his application but, to the contrary, alleges that the PTO "failed to process his properly filed application and refused to acknowledge documents and payments that had been confirmed as received." *Id.* at 5 (Compl. ¶ 19).

Finally, the PTO's most recent explanation poses a difficulty under the *Chenery* principle, which posits "that an agency action cannot stand 'unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.'" *FDA v. Wages and White Lion Invs., LLC*, 604 U.S. 542, 587 (2025) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). "Upholding agency action on an alternative ground not considered by the agency, the [*Chenery*] Court reasoned, would 'intrude upon the domain which Congress . . . exclusively entrusted to an administrative agency.'" *Id.* (same). Here, the PTO issued a decision letter explaining that it denied Plaintiff's refund request because "[a] change of purpose after payment of a fee will not entitle a party to a refund of such fee." Dkt. 1-1 at 19 (Ex. E). The regulation that the PTO cited for support adds some additional context, noting that "[a] change of purpose" might include, for example, "a party['s] desire[] to withdraw a patent filing for which the fee was paid." 37 C.F.R. § 1.26(a). Without the administrative record (if one exists), the Court cannot assess whether the PTO's current description of the basis for denying Plaintiff's request for a refund—that is, that Plaintiff abandoned his application by failing to pay a portion of the application fee and, relatedly, did not pay the $200 by mistake or in excess of the amount due, Dkt. 19 at 2—is the same rationale applied by the decisionmaker—that is, "[a] change of purpose after payment of a fee," Dkt. 1-1 at 19 (Ex. E).

For similar reasons, however, the Court must also deny Plaintiff's motion for summary judgment on his claims against the PTO. According to Plaintiff, he did not seek a refund because

he had a change of heart and declined to pursue his patent application; he asserts that he sought a refund because the PTO never acknowledged receipt of his application and never processed it. Dkt. 15 at 26. On his telling, he paid a fee, the agency "provide[d] no services," and thus the fee was "paid by mistake." *Id.* Or, put more colloquially, a government agency cannot lawfully charge a fee for doing nothing. But, as with the PTO's argument, the Court cannot evaluate this contention without an administrative record or other indicia of what actually happened, and the Court cannot grant summary judgment in Plaintiff's favor where he has failed to carry his burden of demonstrating that no material fact is in dispute and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

Finally, the Court notes that the PTO moves only on the ground that Plaintiff fails to state a claim and, unlike the IRS, it does not dispute that the Court has subject-matter jurisdiction to consider the case on the merits.

The Court will, accordingly, deny both the PTO's motion to dismiss and Plaintiff's cross-motion for summary judgment with respect to Plaintiff's claims against the PTO.

**B. Plaintiff's Claims against the IRS**

The IRS's motion to dismiss fares better than the PTO's. Before turning to the merits of the parties' arguments, the Court addresses three threshold issues.

**1.**

The first threshold question implicates the Court's subject matter jurisdiction. Although the IRS does not dispute that the Court has authority to decide whether the agency properly disallowed Plaintiff's claim for a refund as untimely, in the agency's view, this question implicates the Court's jurisdiction and, accordingly, is properly addressed under Rule 12(b)(1), rather than Rule 12(b)(6). In general, "the United States, as sovereign, 'is immune from suit,

save as it consents to be sued[,] . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (citation omitted). The question of whether limitations on a party's entitlement to sue the United States or an agency of the United States go to the court's jurisdiction or to the merits of the dispute has been much debated. In recent years, moreover, the Supreme Court has observed that it, along with other courts, has "more than occasionally misused the term 'jurisdictional' to refer to nonjurisdictional prescriptions." *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 547 n.4 (2019) (citation modified); *see also Wilkins v. United States*, 598 U.S. 152, 159 (2023).

Here, as explained further below, the parties' dispute turns on the applicability of the general three-year (or two-year) limitation on claiming a credit or refund for a past tax-year. Although fair minds might disagree about whether this limitation is jurisdictional, the Supreme Court has also explained that, despite its evolving approach to the jurisdictional-nonjurisdictional divide, "it will not undo a 'definitive earlier interpretation' of a statutory provision as jurisdictional without due regard for principles of stare decisis," *Wilkins*, 598 U.S. at 159. (citation omitted), and, in any event, this Court clearly lacks authority to "undo" or to depart from binding Supreme Court precedent. For present purposes, that understanding is dispositive. In 1990, the Supreme Court held that the same limitation at issue here—26 U.S.C. § 6511(a)—is jurisdictional. *See United States v. Dalm*, 494 U.S. 596 (1990). To be sure, the scope and applicability of that provision also goes to the merits of the parties' dispute. But, following the Supreme Court's direction, the Court will treat the question as jurisdictional and will consider this portion of Defendant's motion under Rule 12(b)(1).

The second threshold question is equally straightforward. The IRS argues that Plaintiff's APA claims fail as a matter of law because 26 U.S.C. § 7422 ("Section 7422") provides an

adequate judicial remedy. Dkt. 13-1 at 7. The IRS is correct that the APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Here, the IRS acknowledges that if an economic impact payment under the CARES Act is not "received as an advance payment[,]" the taxpayer may claim the credit on a tax return, "and, once claimed," the amount at issue is "treated as [a] refundable tax credit[] resulting in an overpayment and potential for a tax refund."[2] Dkt. 19 at 4. If disallowed, the "taxpayer seeking [the] refund . . . may bring suit against the Government . . . in United States district court," provided that he or she follows the procedures set forth in Section 7422. *United States v. Clintwood Elkwood Min. Co*., 553 U.S. 1, 4–5 (2008). Here, Plaintiff identifies no reason to doubt that the waiver of sovereign immunity and right to bring suit contained in 28 U.S.C. § 1346(a) and Section 7422 provide an adequate remedy for the IRS's disallowance. The Court, accordingly, agrees that Plaintiff's APA claims against the IRS—as opposed to his APA claims against the PTO—fail as a matter of law.

Third, and finally, the IRS correctly notes that a suit brought under Section 7422(a) "may be maintained only against the United States and not against any officer of the United States" and that, if an action is mistakenly brought against an officer or employee of the United States, the Court shall order "that the pleadings be amended to substitute the United States as a party for such officer or employee." 26 U.S.C. § 7422(f). Although Plaintiff resists the IRS's assertion that the United States must be substituted for Frank Bisignano, who is sued solely in his capacity as the Chief Executive of the IRS, he offers no colorable response to this clear statutory

---

[2] In the parlance of the Internal Revenue Code, when "a taxpayer is owed more in refundable credits than her tax liability," the excess amount is nonetheless treated as "an overpayment" entitling the taxpayer to "a 'refund' in an amount corresponding to the constructive overpayment. *See Sarmiento v. United States*, 678 F.3d 147, 153 (2d Cir. 2012) (Katzman, J.).

directive. Dkt. 15 at 15. The Court will, accordingly, order that the Clerk substitute the United States as a party defendant for Mr. Bisignano. The same logic does not extend, however, to Plaintiff's claims against the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office who, as noted above, *see* n.1, *supra*, will remain as an official capacity defendant.

**2.**

With those threshold issues resolved, the Court turns to the parties' dispute regarding Plaintiff's claims against the IRS. Unlike Plaintiff's claims against the PTO, those claims turn on a pure question of statutory interpretation, and, in resolving that question of law, the Court can accept the following facts, which are either undisputed or ultimately immaterial.

Plaintiff filed his 2020 federal income tax return on April 9, 2025, and he asserted and received a foreign tax credit for that tax year based on his payment of Canadian taxes. Dkt. 19-1 at 1–2. He also sought, but did not receive, a CARES Act credit for that tax year, which, if received, would have entitled Plaintiff to "a tax refund." *See* Dkt. 19 at 4. On September 5, 2025, the IRS disallowed Plaintiff's claim to the CARES Act credit for the 2020 tax year. Dkt. 1-1 at 3. It explained its decision as follows:

> We can't allow your claim for a refund[.]
>
> There is no provision in tax law which allows for filing a claim for [a CARES Act credit] beyond the standard deadline of three years from the due date of the original return for the tax year.
>
> The received date on your federal tax return is Apr. 09, 2025. The last day to file a timely claim or federal tax return for tax year 2020 was June 15, 2024. We can't allow your claim or federal tax return because the received date is after the deadline.

*Id.* The decision letter then notified Plaintiff of his right to appeal the decision on his claim, *id.*, and Plaintiff promptly submitted a "Formal Written Protest" to the IRS, asserting that the agency

incorrectly denied his claim to a CARES Act credit in the amount of $1,800, Dkt. 1-1 at 8–16. Because the decision letter is described in, and attached to, Plaintiff's complaint, the Court may consider the agency's reasoning in resolving Defendants' motion to dismiss.[3]

Two sets of statutory provisions animate the parties' dispute; unsurprisingly, each party focuses on the provisions that seem to favor that party.

*First*, subsections (a) and (b) of 26 U.S.C. § 6511 ("Section 6511") set forth the general rule regarding "limitations on credit[s] or refund[s]." Under those subsections, a "[c]laim for a credit or refund of an overpayment of any tax imposed" by the Internal Revenue Code "in respect to which the taxpayer is require to file a return [must] be filed by the taxpayer within" either (1) three "years from the time the return was filed or" (2) two "years of the time the tax was due, whichever" occurs later. 26 U.S.C. § 6511(a). If a claim is filed by the taxpayer within either the three-year or two-year window, then the credit or refund is limited to "the portion of the tax paid" during window. *Id.* § 6511(b)(2).

*Second*, subsection (d)(3)(A) of Section 6511 sets forth a "[s]pecial period of limitation with respect to foreign taxes paid or accrued." The provision provides as follows:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

[3] Defendants request that, to the extent necessary, the Court treat their motion as a motion for summary judgment to Rule 12(d). Dkt. 13-1 at 6–7. Because Plaintiff does not oppose that request and, indeed, cross-moves for summary judgment, the Court grants that request. Ultimately, however, it makes no difference, since the Court can resolve the question presented based on the pleadings alone.

26 U.S.C. § 6511(d)(3)(A). When this subsection applies, the amount of "the credit or refund may exceed the portion of the tax paid within the period" specified in the general rule set forth in Section 6511(b). *Id.* § 6511(d)(3)(B).

The parties' dispute turns on whether Plaintiff's claim for a CARES Act credit is subject to the general three-year limitations period, as the IRS posits, or to the "special" ten-year limitations period (*see* Dkt. 1-1 at 13) applicable to credits related to an overpayment attributable to the payment of foreign taxes, as Plaintiff contends. In arguing that the longer limitations period applies, Plaintiff asserts that "[t]he operative inquiry is whether the claim 'relates to' an overpayment 'attributable to' foreign taxes." Dkt. 21 at 6. It does, according to Plaintiff, because "[t]he overpayment . . . arises from the combined operation of the foreign tax credit for Canadian income paid and the [CARES Act credit] on the same 2020 return." *Id.* The Court is unpersuaded. Plaintiff's reading of the statute proves too much—and, indeed, would require the IRS to apply the "special" ten-year limitations period in *every* case in which a taxpayer's return includes *any* claim for a foreign tax credit—and, in any event, cannot be squared with the plain language of Section 6511.

The Fifth Circuit's decision in *Schaeffler v. United States*, 889 F.3d 238 (5th Cir. 2018), provides helpful guidance. In that case, in April 2013, the plaintiffs filed a second amended joint income tax return for the 2002 tax year, which made two changes from their earlier-filed return: first, they decreased the amount of their foreign tax credit, and, second, they increased the amount of their minimum tax credit. *Id.* at 240–41. "[T]he net decrease in [the] foreign tax credit . . . absorbed a portion of the . . . increase in [the] minimum tax credit, resulting in an overpayment of" about five million dollars. *Id.* at 241. The plaintiffs sought a refund of this overpayment, and the IRS disallowed the claim as untimely. *Id.* The plaintiffs, then, brought

suit in federal district court, and the government moved to dismiss for lack of "subject matter jurisdiction because the refund claim was untimely." *Id.* The district court granted that motion, and the plaintiffs appealed to the Fifth Circuit. *Id.* at 241–42.

On appeal, the Fifth Circuit agreed with the government and the district court that the special ten-year limitations period did not apply. As the parties do here, the Fifth Circuit focused on the phrase "attributable to" in Section 6511(d)(3)(A). *Id.* at 243. Giving that phrase its "ordinary meaning," the court concluded that it means "due to, caused by, or generated by." *Id.* (citation modified). The overpayment, moreover, must be "attributable to" the foreign taxes "for which credit is *allowed* against [the federal income] tax." *Id.* at 244 (quoting § 6511(d)(3)(A)) (emphasis added by the Fifth Circuit). In that case, the foreign tax liability "generated a net tax reduction (and not an increase or an allowance of) [a] foreign tax credit for 2002," and "[t]his *reduction* could not have caused the *over*payment." *Id.* As the Fifth Circuit explained, "a reduction in [the plaintiffs'] 2002 foreign tax liabilities," and thus a reduction in their foreign tax credit, "did not cause the *over*payment in 2002." *Id*. at 246. As a result, the special ten-year limitations period did not apply.

That same logic applies here. Plaintiff's claim for a credit or refund does not relate to an overpayment attributable to the payment of any foreign taxes for which a credit was allowed against Plaintiff's U.S. tax liability. As in *Schaeffler*, any overpayment was not "due to, caused by, or generated by," *id*. at 244, Plaintiff's payment of foreign taxes; rather, the relevant overpayment, if any, was attributable to Plaintiff's eligibility for a CARES Act credit. As a result, as in *Schaeffler*, the specific limitations period for credits or refunds attributable to the payment of foreign taxes does not apply, and Plaintiff's claim is, instead, subject to the general three-year (or two-year) limitations period.

Plaintiff responds that the statutory phrase "relates to" requires the Court to give Section 6511(d)(3)(A) a more expansive construction. He argues that his "foreign taxes reduced [his] United States tax liability" and that his "refund claim therefore *relates to* an overpayment attributable to these foreign taxes within the plain meaning of [Section] 6511(d)(3)(A)." Dkt. 15 at 9. Although courts have, at times, given the phrase "relating to" broad meaning, *see Friedman v. Sebelius*, 686 F.3d 813, 820 (D.C. Cir. 2012), the Court cannot ignore the surrounding text. Here, the question is not whether Plaintiff's *aggregate* claim for a refund is premised on any host of factors, so long as part of his *overall* tax liability includes a foreign tax credit; did he, for example, file a joint return, claim a child tax credit, an earned income tax credit, a clean vehicle credit, *and* a foreign tax credit? The question is whether "*the* claim for credit" at issue—that is, Plaintiff's claim to a CARES Act credit—"relates to an overpayment" that was caused by Plaintiff's payment of foreign taxes. The mere fact that these credits were claimed in the same 2020 federal income tax return does not suffice to establish any connection between Plaintiff's foreign tax liability and his claim from a CARES Act credit, and Plaintiff fails to offer any reason to believe that his foreign tax liability bears any relationship whatsoever to that credit.

The Court, accordingly, concludes that the general limitations period set forth in Section 6511(a) & (b) is controlling; that Plaintiff failed to claim a CARES Act credit within the three-year limitations period; and that the Court, accordingly, lacks subject matter jurisdiction over Plaintiff's claim against the IRS.

**C. Plaintiff's Claims Against the Doe Defendants**

That leaves Plaintiff's claims against the ten Doe Defendants, whom Plaintiff has yet to identify or to serve. Although Plaintiff gestures at the notion that he might be able identify these individuals after discovery, the Court is unpersuaded that the case can—or should—continue

based on the prospect that their identify might someday come to light. To start, Plaintiff has not sought pre-service discovery. But even giving him the benefit of the doubt, and assuming that he seeks "discovery to identify the unknown defendants" so that he can effect service, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), any such effort would be pointless, since the complaint, in any event, fails to state a claim against the Doe Defendants, *see Azubuko v. Parking Officer No. 241*, No. 20-3383, 2021 WL 827132, at *2 (D.D.C. Mar. 3, 2021); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 (D.D.C. 2015).

Here, Plaintiff fails to allege any facts that would reasonably support a claim against any individual officer or employee of the PTO or the IRS. Plaintiff's consumer protection and fair dealing claim fails to identify any statutory or common law cause of action, and the Court is unaware of a basis for suing federal officers or employees for damages resulting from the PTO's failure to refund a fee or the IRS's erroneous resolution of a tax claim. Indeed, the Internal Revenue Code expressly precludes bringing tax refund suits "against any officer or employee of the United States," 26 U.S.C. § 7422(f), and, in any event, the Court has already concluded the IRS correctly disallowed Plaintiff's claim as untimely. Finally, although Plaintiff's complaint asserts *Bivens* claims against the Doe Defendants for violating his rights to procedural and substantive due process, he fails to allege any facts that would even arguably support such a claim against any individual.

The Court will, accordingly, *sua sponte* dismiss Plaintiff's claims against the Doe Defendants for failure to state a claim and, in the alternative, for failure to effect service in a timely manner, Fed. R. Civ. P. 4(m).

## CONCLUSION

The Court will, accordingly, **GRANT** in part and **DENY** in part Defendants' motion to dismiss, Dkt. 13, and will **DENY** Plaintiff's cross-motion for summary judgment, Dkt. 16. The Court hereby **DISMISSES** Plaintiff's claims against the United States (as substituted for the Chief Executive Office of the Internal Revenue Service) relating to the IRS's disallowance of his claim for a CARES Act credit and related refund for lack of subject matter jurisdiction; **DISMISSES** Plaintiff's consumer protection and fair dealing claim against all Defendants for failure to state a claim; and **DISMISSES** Plaintiff's claims against the Doe Defendants for failure to state a claim and, in the alternative, for failure to effect service. After filing the appropriate administrative record, the Under Secretary of Commerce for Intellectual Property and Director of PTO may move for summary judgment on Plaintiff's sole remaining claim, and Plaintiff may, if appropriate, file a cross-motion for summary judgment with respect to that claim. Plaintiff's motion for status update and to expedite ruling, Dkt. 22, is further **DENIED** as **MOOT.**

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 15, 2026